**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MARILYN BAILEY | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | ________________________ |
| | : | |
| | : | |
| RV BEHAVIORAL, LLC (d/b/a RIDGEVIEW INSTITUTE and US HEALTHVEST, LLC | : | |
| | : | |
| Defendants. | : | |

# COMPLAINT

Marilyn Bailey files her Complaint against Defendants RV Behavioral, LLC (d/b/a Ridgeview Institute ("Ridgeview") and the US HealthVest, LLC ("HeathVest") (collectively "Defendants"). Plaintiff suffered several injuries in an automobile accident. Defendants granted her leave under the FMLA and ADA for her treatment and surgery to recover. Even though Plaintiff's medical provider cleared her to return to work on December 3, 2022 with no restrictions, the new Director of Human Resources, Tanya Reed, terminated her on November 4, 2022 instead of providing her with just 28 more days of leave. Despite Defendants marking Plaintiff as eligible for rehire, they have retaliated

against her for engaging in protected activity by refusing to consider her for almost continuously open positions she applies for. Defendants also failed to provide Plaintiff with a COBRA Notice after her termination.

## NATURE OF THE ACTION

1.

This is an action for discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§'s 12101 et. seq, (ADA), and failure to provide notice under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 et seq. ("COBRA").

## PARTIES

2.

Plaintiff Marilyn Bailey is a U.S. citizen and resident of Douglas County in the State of Georgia.

3.

Defendant RV Behavioral, LLC is a limited liability corporation organized under the laws of Delaware, with its principal place of business at: 3995 South Cobb Drive, Smyrna, GA, 30080. It is subject

to an action under the ADA and COBRA and can be served with summons and complaint upon its Registered Agent, Registered Agent Solutions, Inc. at: 900 Old Roswell Lakes Pkwy., Suite 310, Roswell, Georgia, 30076.

4.

Defendant US HealthVest, LLC is a limited liability corporation organized under Delaware law, with its principal officers at: 32 E. 57th Street, 17th Floor, New York, NY 10022. It is subject to an action under the ADA and COBRA, and can be served with summons and complaint upon its Chief Executive Officer and President, Richard A. Kresch, at its principal offices.

**JURISDICTION AND VENUE**

5.

The claims in this lawsuit present federal questions and jurisdiction in this Court is proper under 28 U.S.C. §§'s 1331, 1337, and 1343. In addition, this Court has jurisdiction over the failure to provide Plaintiff a COBRA notice under 29 U.S.C. § 1132.

6.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391. The alleged unlawful acts against Plaintiff

occurred in this judicial district and division. In addition, Defendants operate in this judicial district and division.

7.

Plaintiff filed an EEOC Charge against both Defendants with the Equal Employment Opportunity Commission on January 4, 2023. The EEOC issued a Notice of Right to Sue on the EEOC Charges filed against both Defendants on September 26, 2023.

8.

RV Behavioral and HealthVest are joint or single employers under the ADA.

9.

HealthVest owns and operates Ridgeview in Georgia.

10.

Managers and Human Resources employees at Ridgeview participate in the management and employment decisions regarding Plaintiff and other employees at their facilities in Georgia (including her leave, termination, and hiring).

11.

HealthVest publishes its employment policies for Ridgeview in a common Employee Handbook for employees of "US HealthVest."

12.

HealthVest refers to Ridgeview employees as having an employment relationship with it in this handbook and other documents.

**FACTUAL ALLEGATIONS**

13.

On or about December 29, 2018, Defendants hired Plaintiff as a Housekeeper.

14.

On or about December 29, 2019, Plaintiff was promoted to Residence Counselor, a full-time position. She received a raise.

15.

On or about July 26, 2020, Plaintiff was promoted to A & R Tech. She received a raise.

16.

On or about June 28, 2023, Plaintiff was promoted to an HIM Analyst position. She received a raise.

17.

On or about December 2, 2021, Plaintiff was promoted to Intake Specialist. She received a raise.

18.

In the Intake Specialist Position, Plaintiff provided clerical services in coordinating patient appointments and initial care for patients in the admissions process.

19.

Plaintiff's last position was Intake Call Specialist.

20.

On January 24, 2022, Plaintiff was in an automobile accident that caused her several injuries that constitute disabilities under the ADA because they interfered with her ability to walk, sit, stand, and lift.

21.

Plaintiff notified Defendants that she needed leave for medical treatment and recovery, which it approved.

22.

She also applied for and received disability benefits through a third-party insurer provided by HealthVest.

23.

Although Plaintiff does not recall receiving an FMLA designation notice, Plaintiff was allowed FMLA leave.

24.

Throughout her leave, through both text messages and phone calls, Plaintiff always kept her supervisor, Vera Stewart, informed of her condition and need for accommodation.

25.

Plaintiff wanted to return to work, but had worsening bursitis in her left elbow (she is left-handed), which required surgery.

26.

On April 27, 2022, Plaintiff called Stewart to notify her that the surgery was scheduled for June 28, 2022.

27.

Plaintiff underwent elbow surgery on June 28, 2022, which required additional leave for recovery.

28.

During this time, HealthVest's VP of Human Resources, Henry In, oversaw Plaintiff's leave and disability benefits.

29.

Plaintiff's leave continued without incident until the Defendants hired Tanya Reed as Director of Human Resources at Ridgeview around June 26, 2022.

30.

Reed immediately began harassing Plaintiff about when she would return to work.

31.

During the first call, Reed told Plaintiff she was on her "to-do" list and should have been terminated when her FMLA leave expired in April.

32.

Even though Defendants approved Plaintiff's FMLA leave and all of her communications with the disability insurer were copied to Henry In, VP of HR for HealthVest, Reed claimed that she had no such records.

33.

In response, Plaintiff sent copies of medical and leave documentation to Reed.

34.

Defendants had never notified Plaintiff that she needed to pay her health insurance premiums while on leave.

35.

Reed told her she would have to repay the missed premium payments through payroll deduction after returning to work.

36.

In late October 2022, Reed called Plaintiff and asked her to return her call. When Plaintiff returned that call, Reed asked her if she ever planned to return to work.

37.

Plaintiff replied that she did plan to return to work and informed Reed that she had her last post-op medical appointment on November 2, 2022, and that she would be discussing a return to work with her medical treatment provider during that appointment.

38.

During this call, Reed asked Plaintiff if she was "mentally" able to return to work because some individuals never recover from accident trauma.

39.

Plaintiff replied that she was "mentally" able to return to work.

40.

Reed replied that Plaintiff must obtain "full clearance" to return.

41.

In a Position Statement she filed with the EEOC, Reed falsely stated that Plaintiff told her she was ready to return to work in September but that

her lawyer wanted her to stay out longer because they were close to settling her personal injury suit. She never made any such statement to Reed. At all times, Plaintiff's medical treatment providers guided her return to work decisions.

42.

Reed also falsely stated that Plaintiff told her she would return to work on November 3, 2023, following her November 2, 2023 follow-up appointment with her doctor. Plaintiff only told Reed that she would discuss when her medical treatment provider would approve her to return to work at that appointment.

43.

On November 2, 2022, Plaintiff's medical treatment provider wrote a Return to Work form fully clearing her to return to work without any restrictions on December 3, 2022.

44.

Plaintiff immediately sent the form to Reed.

45.

During a November 4, 2022 telephone call, Reed terminated Plaintiff.

46.

On the Separation Notice, Defendants stated that the reason for termination was "Exhausted Leave/FMLA — Failure to Return from Leave of Absence."

47.

Plaintiff had provided a date of return of December 4, 2022.

48.

During the call, Plaintiff asked Reed if Defendants could grant her the reasonable accommodation of just 28 more days of leave.

49.

Reed replied that Defendants could not wait and that Plaintiff could reapply for a job after thirty days.

50.

This was a disingenuous offer because Reed knew she never intended to rehire Plaintiff.

51.

It would not have been an undue burden on Defendants to allow Plaintiff just 28 days more leave.

52.

The positions for which Plaintiff has worked for Defendants are high turnover positions that are almost constantly open, particularly those positions requiring overnight shifts.

53.

During this call, Reed falsely accused Plaintiff of previously stating that she would be cleared to return to work on November 3, 2022.

54.

Despite Plaintiff's doctor giving a specific date to return of December 4, 2022, in the Position Statement to the EEOC, Reed falsely stated that Plaintiff's return to work date was "unclear."

55.

During the call, Reed refused to identify who made the termination decision.

56.

On December 5, 2022, Plaintiff reapplied for an open position, but Defendants never contacted her for an interview despite her qualifications and record of excellent employment performance and promotions.

57.

Despite the futility of applying, Plaintiff has continued to apply for several open positions since then.

58.

Defendants have still never interviewed Plaintiff.

59.

Despite her outstanding record of performance, punctuality, and attendance (before her accident), particularly while working the night shift, Defendants continue to hire less qualified individuals who it does not know have any disabilities and who have not engaged in protected activity under the ADA.

60.

Stewart and other supervisors would hire Plaintiff for these open positions, but Reed blocks Plaintiff from even obtaining an interview.

61.

In her termination letter, Reed stated that all of Plaintiff's benefits would end immediately.

62.

Plaintiff had to contact the long-term disability insurance carrier, who paid her benefits through her return to work date.

63.

Although the termination letter stated that Plaintiff was eligible for COBRA benefits and would receive an election notice from Defendants, she never received a COBRA notice.

64.

Defendants either intentionally did not provide the COBRA notice or did not have a reasonable procedure to ensure she received it.

65.

Defendants' discriminatory and retaliatory acts have caused Plaintiff emotional distress and financial hardship.

**COUNT ONE**
**DISCRIMINATION UNDER THE ADA**
**(TERMINATION)**

66.

Plaintiff's injuries and lacerations to her left knee and elbow are physical impairments that substantially limited her in the major life activities of walking, standing, sitting, bending, and lifting.

67.

Plaintiff was qualified for her Intake Specialist position, having performed her duties without incident and receiving several promotions throughout her employment.

68.

Defendants are employers of Plaintiff under the ADA.

69.

By terminating Plaintiff because of her disability, Defendants violated the ADA.

70.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT TWO**
**FAILURE TO ACCOMMODATE UNDER THE ADA**
**(Leading to Termination)**

71.

Plaintiff requested leave as a reasonable accommodation because of her disability.

72.

Defendants violated the ADA by failing to grant Plaintiff a reasonable accommodation of allowing her 28 days of additional leave.

73.

Due to the above-listed injuries and disabilities, Plaintiff needed a reasonable accommodation of leave to recover from her injuries so that she could return to work.

74.

Twenty-eight days of additional leave is a reasonable accommodation.

75.

Reed ended the dialogue with Plaintiff on a reasonable accommodation.

76.

It would have been an undue burden on Defendant to allow Plaintiff 28 more days of leave as an accommodation.

77.

Rather than consider or grant Plaintiff leave as an accommodation, Defendants terminated Plaintiff.

78.

Defendants violated the ADA by failing to grant Plaintiff a reasonable accommodation to take 28 more days to recover from her disabilities.

79.

As a result of Defendants' failure to accommodate, Plaintiff is entitled to recover the relief requested below.

**COUNT THREE**
**RETALIATION UNDER THE ADA**
**(TERMINATION)**

80.

Plaintiff engaged in protected activity under the ADA by requesting leave as an accommodation for her disabilities and medical treatment.

81.

By denying Plaintiff an additional 28 days of leave and terminating her, Defendants retaliated against Plaintiff for engaging in protected activity.

82.

The termination was causally related to the protected activity of seeking additional leave.

83.

As a result of Defendants' retaliation, Plaintiff is entitled to recover the relief requested below.

**COUNT FOUR**
**DISCRIMINATION UNDER THE ADA**
**(FAILURE TO REHIRE)**

84.

Defendants regarded Plaintiff as disabled.

85.

Plaintiff had a record of disability.

86.

Defendants were aware that Plaintiff had suffered from a disability or had a record of a disability.

87.

Defendants marked Plaintiff as eligible for rehire when they terminated her.

88.

Beginning on December 5, 2022, the day after her medical provider cleared her to return to work, Plaintiff has applied for several open positions at the Ridgeview location for which she was qualified.

89.

Some of these were positions from which she had been promoted and given raises because of her job performance.

90.

Despite her performance record, Defendants have never even granted Plaintiff an interview.

91.

Defendants continue to hire lesser-qualified employees who have no record of satisfactory employment at Ridgeview because, at the time it hires them, Defendants have no knowledge of them having a record of disability and do not regard them as disabled.

92.

Defendants refuse to hire, or even interview, Plaintiff because of her record of having a disability, or because they regard her as disabled.

93.

If allowed, Ridgeview managers would have rehired Plaintiff for these open positions.

94.

Reed and employees for Defendant HealthVest continue to block Plaintiff from being interviewed or hired for these open positions.

95.

On June 29, 2023, there was an open position for which Plaintiff was qualified.

96.

By failing to hire Plaintiff for the open positions she applied for, and continues to apply for, Defendants violated the ADA.

97.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT FIVE**
**RETALIATION UNDER THE ADA**
**(FAILURE TO REHIRE)**

98.

Plaintiff engaged in protected activity under the ADA by requesting leave as an accommodation for her disabilities and medical treatment.

99.

Plaintiff engaged in protected activity under the ADA when she filed an EEOC Charge.

100.

Defendants marked Plaintiff as eligible for rehire when they terminated her.

101.

Beginning on December 5, 2022, the day after her medical provider cleared her to return to work, Plaintiff has applied for several open positions at the Ridgeview location for which she was qualified.

102.

Some of these were positions from which she had been promoted and given raises because of her job performance.

103.

Despite her performance record, Defendants have never even granted Plaintiff an interview.

104.

Defendants continue to hire lesser-qualified employees who have no record of satisfactory employment at Ridgeview because they have not engaged in protected activity under the ADA.

105.

Defendants refuse to hire, or even interview, Plaintiff because of her protected activity.

106.

But for her engaging in protected activity, managers working for Ridgeview would have rehired Plaintiff for these open positions.

107.

Reed and employees for Defendant HealthVest continue to block Plaintiff from being interviewed or hired for these open positions because she has engaged in protected activity.

108.

On June 29, 2023, there was an open position for which Plaintiff was qualified.

109.

But for Plaintiff refusing to release her discrimination and retaliation claims, Defendants would have hired Plaintiff for that open position.

110.

Defendants refuse to hire, or even interview, Plaintiff because she engaged in protected activity under the ADA.

111.

By failing to hire Plaintiff for the open positions she applied for, and continues to apply for, because she engaged in protected activity, Defendants violated the ADA.

112.

As a result of Defendants' retaliatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT SIX**
**FAILURE TO PROVIDE COBRA NOTICE**

113.

Defendants made group health insurance benefits plans available to its employees.

114.

Either Defendants or a third party was the health benefits plan administrator.

115.

Plaintiff enrolled in a health insurance benefits plan provided by Defendants and, at the time of her termination, was enrolled in such a plan.

116.

Defendants are a "qualifying employer" under COBRA because they employed twenty or more full-time equivalent employees during the relevant time period.

117.

At the time of her termination, Plaintiff was a qualified employee under COBRA entitled to timely notice of her option to continue the employer's health insurance benefits coverage.

118.

The termination of Plaintiff was a “qualifying event” under COBRA.

119.

Defendants did not terminate Plaintiff for gross misconduct.

120.

In her termination letter, Reed stated that Plaintiff was eligible for COBRA benefits and would receive notice of her option to continue coverage.

121.

Under COBRA, the employer must have a reasonable procedure for providing notice of continuation of benefits to covered employees and their spouses subject to a qualifying event.

122.

Neither Defendants nor any health benefits administrator provided with the written notice to Plaintiff of her right to continuing health insurance benefits required under COBRA, or the forms necessary to do so.

123.

Defendants did not have a reasonable procedure to ensure that a COBRA notice is provided to its employees enrolled in its health insurance benefits plans after a job termination.

124.

Defendants did not take reasonable measures to ensure that Plaintiff received such notice, or to find out if any of its efforts to notify her, failed.

125.

Defendants failed to provide Plaintiff with the required COBRA notice.

126.

As a result of Defendants' failure to provide Plaintiff with notice of her rights to pay for continuing health insurance benefits under COBRA, Plaintiff suffered a financial loss and further out-of-pocket expenses.

WHEREFORE, Plaintiff prays:

a. That Summons issue requiring Defendants to answer the Complaint within the time provided by law;

b. That Plaintiff be awarded a declaratory judgment that Defendants violated the ADA;

c. That Plaintiff recover from Defendants back pay and benefits with pre-judgment interest;

d. That Plaintiff recover compensatory damages against Defendants in an amount to be determined by a jury;

e. That Plaintiff recover punitive damages against Defendants in an amount to be determined by a jury;

f. That the Court order injunctive or equitable relief to reinstate Plaintiff or in lieu of reinstatement provide front pay and benefits;

g. That Plaintiff be awarded a declaratory judgment that Defendants failed to take reasonable measures for Plaintiff to receive a COBRA election notice;

h. That the Court order Defendants to pay the statutory penalty of $220 a day for failing to provide a COBRA notice to her and her spouse;

i. That Plaintiff recover attorney's fees and costs of litigation under the ADA, COBRA, and other applicable federal law;

j. That the Court award Plaintiff any other or further relief as it deems necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted this 15th day of October, 2023.

T. Robert Reid, LLC

s/ Tilden Robert Reid, II
T. Robert Reid
Ga. Bar No. 600138
1030 Woodstock Road
Suite 3112
Roswell, Georgia 30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff